# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SUSAN FEAGINS and | * | CIVIL ACTION: 3:16-cv-00181 |
| ANTIONNE FEAGINS | * | |
| | * | JUDGE: JOHN W. deGRAVELLES |
| VERSUS | * | |
| | * | |
| WAL-MART STORES, INC. | * | MAGISTRATE: R. BOURGEOIS, JR. |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE

MAY IT PLEASE THE COURT:

Defendant, Wal-Mart Stores, Inc., submits this Memorandum in Opposition to Plaintiff's Motion in Limine. For the following reasons, Plaintiff's Motion in Limine should be denied.

**1. Plaintiff's Sources of Medical Funding are Relevant, Admissible, and Not Prejudicial**

Plaintiff's sources of funding for medical treatment, provided by both her counsel and Medicaid, is relevant, admissible, and non-prejudicial evidence. The fact that Plaintiff's counsel paid Plaintiff's physicians for medical treatment is pertinent to the jury's ability to evaluate the plaintiff's credibility at trial. Federal Rule of Evidence 607 allows for a party to attack the credibility of a witness.

Plaintiff's counsel's payment of her medical bills has bearing on the credibility of Plaintiff's health care providers. In *Tiemann v. Graff*, (La. App. 5th Cir. 11/12/1985); 478 So.2d 1267, 1270, the Louisiana Fifth Circuit held that questioning the plaintiff's treating physician about a billing agreement with counsel "was relevant and not improper. . . ." because "[a]n attorney is entitled to impeach his opponent's witness." Therefore, evidence about who paid Plaintiff's bills for medical treatment should be considered by the jury to evaluate the plaintiff's credibility.

Further, both Medicaid and attorney negotiated medical discounts are not collateral

sources, and are thus admissible at trial. In *Bozeman v. State*, 879 So.2d 692, 705-06 (La. 2004), the Louisiana Supreme Court held that "Medicaid recipients are unable to collect Medicaid 'write-off' amounts as damages because no consideration is provided for the benefit. Thus, plaintiff's recovery is limited to what was paid by Medicaid Therefore, Plaintiff is not entitled to recover Medicaid "write-off" amounts, and such should not be excluded from evidence so that the jury can fully understand the nature and extent of her damages.

Plaintiff does not put forth any sources or citations to support her contention that her status as a Medicaid recipient is prejudicial. However, the fact that Medicaid is not a collateral source weighs in favor of the admissibility, as the extent of her recovery of medical expenses is expressly limited by her status as a Medicaid recipient.

Further, in *Hoffman v. 21st Century North America Ins. Co.*, 2014-2279, p. 6 (La. 10/2/15); --- So.3d ----, 2015 WL 5776131, the Louisiana Supreme Court held that "an attorney-negotiated medical discount or 'write-off' is not a payment or benefit that falls within the ambit of the collateral source rule." Based on the *Hoffman* decision, any discounts of medical expenses negotiated by Plaintiff's counsel should not be excluded from evidence pursuant to the collateral source rule.

Defendant does not intend to mention hypothetical health insurance, especially in the face of the collateral source rule. However, attorney payments of medical expenses, attorney-negotiated discounts of medical expenses, and Medicaid are relevant, admissible, and non-prejudicial under the Federal Rules of Evidence and applicable case law, and should be considered by the jury.

**2. There is No Basis for Plaintiff's Argument on Anti-Lawyer and Anti-Lawsuit Sentiment, and Attorney Referrals to Treating Physicians are Relevant and Admissible**

Plaintiff contends that the fact that her attorneys referred her to treating physicians will be

used at trial to propagate anti-lawyer and anti-lawsuit sentiment. This assertion is incorrect. In fact, it is difficult for Defendant to understand Plaintiff's argument regarding the relationship between anti-lawyer and anti-lawsuit sentiment and counsel's referrals to treating physicians. An attorney referring a plaintiff to a treating physician is not, *per se*, indicative of anti-lawyer and anti-lawsuit sentiment.

However, the fact that Plaintiff's attorneys referred her to her treating physicians is pertinent to the jury's ability to evaluate the truthfulness, accuracy, and credibility of the testimony presented by the plaintiff at trial. As previously stated, Federal Rule of Evidence 607 allows for a party to attack the credibility of a witness. Evidence of a treating physician's relationship with the plaintiff's counsel, and evidence of plaintiff's counsel's referrals to said treating physician, is critical to the jury's ability to evaluate whether the treating physician is biased or has some interest in the outcome of Plaintiff's claim. Evidence about who referred the plaintiff for treatment and the relationship between the parties to the referral goes to the core of the treating physician's credibility, and should be considered by the jury.

In *Gunn v. Robertson*, 01-347 (La. App. 5th Cir. 11/14/01); 801 So.2d 555, 566-67, the Louisiana Fifth Circuit affirmed the trial court's decision to allow the defendants to attack the credibility and bias of the plaintiff's treating physician based on the fact that 75% of the physician's medical practice resulted from plaintiff attorney referrals. The trial court held, and the appellate court affirmed, that the issue of bias would go to the weight of the physician's testimony. *Id.*

Further, *Adam v. Canal Indemnity Company*, 99-1190 (La. App. 3rd Cir. 5/10/00); 760 So.2d 1197, does not stand for the proposition put forth by Plaintiff. Rather, Plaintiff's argument is taken from the **<u>dissenting opinion</u>** in that case. 760 So.2d at 1209 (Thibodeaux, J., dissenting). The majority of the Louisiana Third Circuit in *Adam* found "The record reveals that the evidence

regarding pre-litigation statements and Plaintiffs' retention of counsel was either raised by Plaintiffs in argument or on cross examination." *Id.* at 1202. Additionally, *Adam* does not make any mention of anti-lawyer and anti-lawsuit sentiment. Thus, Plaintiff's creation of a connection between anti-lawyer and anti-lawsuit sentiment and attorney referrals to treating physicians is wholly unsupported by the case law, and should be disregarded.

### 3. Defendant Does Not Intend to Bring Up the Possible Taxation of Plaintiff's Award

Contrary to Plaintiff's Motion in Limine, Defendant does not intend to bring up the topic of whether Plaintiff's recovery would or would not be subject to federal income taxation or any other form of taxation. This issue is not relevant to the trial of this matter, and any argument made by the plaintiff in relation to this taxation issue is inapplicable. Thus, this issue is moot.

### 4. Defendant Intends to Comply with the Federal Rules of Evidence Regarding the Admissibility of Prior Criminal History

Defendant intends to abide by Federal Rule of Evidence 609. The plain language of this rule provides:

> **(a) In General.** The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
> **(1)** for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
> **(A)** must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
> **(B)** must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and
> **(2)** for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement.
> **(b) Limit on Using the Evidence After 10 Years.** This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
> **(1)** its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and

(**2**) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Notably, to the extent Plaintiff's prior criminal convictions include a dishonest act or false statement within the past ten years, this Court **must** admit such evidence under Federal Rule of Evidence 609(a)(2), without any consideration of the punishment or potential prejudice. Thus, Plaintiff's position regarding this Court's need to preclude the admission of evidence regarding her prior criminal history is not supported by the plain language of the Federal Rules of Evidence.

5.  **Defendant Previously Produced the Video Surveillance at Issue and Plaintiff had Actual Knowledge of the Video Surveillance and Listed it as an Exhibit for Trial**

Plaintiff's complaints about the video surveillance are unfounded, and result from Plaintiff's lack of diligence. First, as the Court is aware, the discovery deadline in this matter was extended from January 27, 2017 to March 24, 2017.[1] On June 16, 2016, Defendant produced all of the Video Surveillance at issue.[2] The Video Surveillance was produced on a single disc, with two separate camera shots contained on the disc. One of the camera shots is of the action alley leading from the entrance into the store. The other camera shot is of the pharmacy, including the counter and waiting area.

Plaintiff claims that the video surveillance produced was of "only one (1) view of surveillance footage which is the Wal-Mart Supercenter Store entrance, or as referred to by Wal-Mart employees' [sic], "action alley."[3] However, Plaintiff not only had knowledge about the two shots of video surveillance produced before the discovery deadline, but also included the video surveillance at issue as an exhibit for trial.

On March 2, 2017, before the March 24, 2017 discovery deadline, Plaintiff took the

---

[1] Rec. Doc. 12.
[2] Defendant's Responses to Plaintiff's Requests for Production, at Responses 1, 2, 5, and 7, attached as Exhibit A.
[3] Rec. Doc. 21-1, at p.8.

deposition of Ireka Pursley, the Asset Protection Associate at Wal-Mart who reviewed the video

surveillance to determine whether an incident was captured.[4] Ms. Pursley testified:

> Q. . . . What do you recall the footage from this video surveillance showing?
> A. From this video that I burned, **we have the two shots**. What I saw, there was no accident. The entire time that we watched it, there was no accident.[5]

Despite obtaining testimony from Ms. Pursley regarding the existence of two shots from the video

surveillance, Plaintiff did not inquire about her alleged receipt of only one shot from the video

surveillance until August 10, 2017, five months after this deposition and the March 24, 2017

discovery deadline.

Further, on July 21, 2017, the parties submitted a Proposed Joint Pre-Trial Order to this

Court.[6] In the Proposed Joint Pre-Trial Order, Defendant provides:

> Wal-Mart personnel reviewed extensive video surveillance film **from the pharmacy counter area** at or around the time of the plaintiff's accident, and the plaintiff's accident does not appear in such video. In fact, video of this area was reviewed for other days as well, in the event the plaintiff was mistaken as to the date of her incident, and no accidents appear. **The store video does, however, show plaintiff entering the store on the date of the alleged incident.**[7]

Additionally, in the Proposed Joint Pre-Trial Order, Plaintiff lists as an exhibit for trial "Video

surveillance DVD of the Denham Springs pharmacy dept. recorded on the date of the plaintiff's

accident."[8] This contradicts Plaintiff's claim in the present Motion in Limine that Defendant only

provided Plaintiff "with a surveillance video depicting [the] entrance of the Wal-Mart Store on the

date of the accident."[9] Moreover, Plaintiff did not object to Defendant's exhibit in the Proposed

Joint Pre-Trial Order of "Video surveillance DVD of the Denham Springs pharmacy dept. recorded

---

[4] Deposition of Ireka Pursley, at pp. 7, 11, attached as Exhibit B.
[5] Exhibit B, at p. 12 (Deposition of Ireka Pursley) (emphasis added).
[6] Rec. Doc. 15.
[7] Rec. Doc. 15, at p. 3 (emphasis added).
[8] Rec. Doc. 15, at p. 4.
[9] Rec. Doc. 21-1, at p. 9.

on the date of the plaintiff's accident."[10]

When Plaintiff first reported Defendant's alleged failure to produce the two shots from the video surveillance, Defendant immediately sought to cure this previously-unknown alleged deficiency. On August 10, 2017, Defendant produced a duplicate disc containing two views taken from the video surveillance.[11] On August 18, 2017, Plaintiff's counsel e-mailed Defense counsel, claiming there was nothing burned on the CD that was sent on August 10, 2017.[12] This claim is highly unusual, as Defense counsel checked the duplicate video surveillance on multiple computers before sending it to Plaintiff's counsel. However, Defense counsel's paralegal offered to make the video surveillance available for viewing at Defense counsel's office.[13]

Plaintiff knew about the two shots of video surveillance during discovery, and did not report any supposed deficiency with Defendant's production of the two shots of video surveillance until August 10, 2017. This reported deficiency was brought to Defendant's attention **after** depositions regarding the two shots of video surveillance were taken, and **after** Plaintiff listed the video surveillance shot at issue as an Exhibit for trial. Had Plaintiff been diligent in reporting this deficiency, the video surveillance could have been provided to Plaintiff in another form, such as a viewing at Defense counsel's office, or even before or after the deposition of Ireka Pursley. Instead, Plaintiff has waited until the eve of trial to report a supposed discovery deficiency for video surveillance that she has listed as an exhibit. There is no "trial by ambush" here, and the video surveillance should be admissible at trial based on Plaintiff's prior knowledge and representations to this Court.

---

[10] Rec. Doc. 15, at p. 6.
[11] Correspondence from Defendant's Paralegal to Plaintiff's Counsel, August 10, 2017, attached as Exhibit C.
[12] E-Mail from Plaintiff's Counsel to Defense Counsel, August 18, 2017, attached as Exhibit D.
[13] E-Mail from Defense Counsel's Paralegal to Plaintiff's Counsel, August 18, 2017, attached as Exhibit E.

**6. Conclusion**

WHEREFORE, Defendant, Wal-Mart Stores, Inc., respectfully requests that this Court deny Plaintiff's Motion in Limine.

Respectfully submitted:

s/ Sidney J. Hardy

_____

SIDNEY J. HARDY (#1938)
McCRANIE, SISTRUNK, ANZELMO,
  HARDY, McDANIEL & WELCH, LLC
909 Poydras Street, Suite 1000
New Orleans, Louisiana  70112
Telephone:  (504) 831-0946
Facsimile: (800) 977-8810
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/ Sidney J. Hardy

_____

**SIDNEY J. HARDY**